IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-CR-00141-RJC-DCK

| USA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MARCUS BERNARD WATKINS | ) | |
| | ) | |
| | ) | |
| | ) | |

**THIS MATTER** comes before the Court on the defendant's Motion to Suppress, (Doc. No. 17); the government's response, (Doc. No. 22); the defendant's reply, (Doc. No. 25), and related pleadings. After an evidentiary hearing, the Court denied the Motion to Suppress for the reasons explained below.

I. FACTS

During the hearing seven officers, including four probation officers from the North Carolina Department of Public Safety (NCDPS) and three police officers from the Charlotte-Mecklenburg Police Department (CMPD), testified credibly about their actions leading up to and during a warrantless search of the defendant's bedroom.[1] Accordingly, the Court finds the facts detailed in this Order were established by the preponderance of evidence.

In early 2017, the defendant was convicted of multiple North Carolina felony and misdemeanor offenses in Lincoln and Gaston Counties. Both sentencing courts

---

[1] The defendant raised a claim of racially selective law enforcement in violation of the Equal Protection Clause in his Motion to Suppress. (Doc. No. 17 at 10-12). At the hearing, however, he did not present any evidence or argument on that issue. Therefore, the Court will treat it as abandoned.

imposed suspended sentences of thirty-six (36) months' imprisonment and placed the defendant under the supervision of the NCDPS Probation Office. (Doc. No. 28: Gov. Ex. 6, 9). The courts imposed the regular conditions of probation as listed in N.C. Gen. Stat. §15A-1343(b) and also imposed certain special conditions pursuant to N.C. Gen. Stat. § 15A-1343(b1). Regular condition number 9 was that he shall:

> Submit at reasonable times to warrantless searches by a probation officer of the defendant's person and of the defendant's vehicle and premises while the defendant is present, for purposes directly related to the probation supervision

(Doc. No. 28: Gov. Ex. 6 at 2; Gov. Ex. 9 at 2).

Another regular condition of probation was that defendant shall "not use, possess, or control any illegal drug or controlled substance . . ." (Id.). Regarding the special conditions imposed, the Lincoln County court required the defendant to remain gainfully employed or continue his education and be placed on electronic monitoring. (Doc. No. 28: Gov. Ex. 6 at 2-3). The Gaston County court ordered that the defendant receive a substance abuse assessment. (Doc. No. 28: Gov. Ex. 9 at 2).

The defendant requested that his supervision be transferred to Mecklenburg County. When approved, NCDPS Probation Officer Taara McClendon, a member of the gang unit, became the defendant's supervising officer. The defendant violated the condition that he not use, possess, or control illegal drugs and controlled substances by testing positive for opiates on May 2, 2017, and marijuana on July 18, 2017. (Doc. No. 28: Gov. Ex. 5 at 6, 10). During an office visit with Probation Officer McClendon on August 23, 2017, the defendant admitted using marijuana. (Doc. No. 28: Gov. Ex. 5 at 2). The defendant also failed to obtain a substance abuse

assessment. Additionally, when Probation Officer McClendon visited his home, she smelled the odor of marijuana on several occasions. NCDPS received information that the defendant admitted in 2013 that he was a Blood gang associate. (Doc. No. 28: Gov. Ex. 4). Based on factors about the defendant's history and characteristics, Probation Officer McLendon's supervisor determined the defendant was a Level 1 "high risk" to commit new crime. (Doc. No. 28: Gov. Ex. 5 at 6).

In the summer of 2017, Probation Officers Jason Baker and Jason Bensavage prepared an operation called "Summer Eclipse," in which NCDPS probation officers would conduct compliance checks of probationers on August 30, 2017, between 6 and 11 p.m. The Operations Plan specified that NCDPS would take the lead at residences where a probationer was subject to a warrantless search condition, with the participation of the NCDPS-Special Operations Intelligence Unit, the CMPD, and the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).[2] (Doc. No. 18 at 2-3). Probation Officer McClendon requested that Probation Officer Baker place the defendant on the list of those to be checked because of his continued illegal drug use, his history of weapon possession, and her open investigation of his gang affiliation.

Probation Officer Baker submitted the operation plan for approval by the NCDPS chain of command. (Doc. No. 28: Gov't Ex. 20). The list of probationers to be checked was made available to other NCDPS probation officers who would serve

---

[2] Probation Officer Baker is assigned to an ATF task force along with CMPD Detective Rob Stark. None of the other NCDPS probation officers involved with the search at issue were part of the task force.

as team leaders during the operation so they could conduct background planning. Prior to the operation, Probation Officers Baker and Bensavage led a meeting attended only by NCDPS probation officers to discuss the plan. On the day of the operation, all of the involved law enforcement officers met for briefing on the searches to be conducted by NCDPS probation officers and final assignments of other agencies' personnel who would provide back-up assistance in securing the scene and taking out charges if evidence of new crimes was discovered.

On August 30, 2017, NCDPS Probation Officers Cameron Winchester, Bryan Evans, Christopher Rudar, and Natalie Sherard, accompanied by Rob Stark and other CMPD officers, were the search team for the defendant and his residence.[3] Probation Officer McClendon was assigned to a different search team, but she communicated with Probation Officer Winchester to confirm the defendant's residence. Upon their arrival at 309 Jones Street, at approximately 10:20 p.m., officers observed the defendant run from the parking lot into Apartment 1. The team did not, however, initially proceed to Apartment 1, but instead went to his listed residence, Apartment 2. Probation Officer Winchester knocked on the door and announced their presence. Pamela Watkins, the defendant's mother, answered the door and told them that the defendant had moved next door to Apartment 1.

Probation Officer Winchester then knocked on the front door to Apartment 1 and announced their presence as "probation." The defendant answered the door

---

[3] Recordings from officers' body worn cameras were introduced by the parties and reviewed by the Court. (Doc. No. 19; Doc. No. 28: Gov't Ex. 22-25).

dressed in street clothes.  Probation Officer Winchester handcuffed him for officer safety and explained that they were there to conduct a warrantless search.  He asked the defendant where he lived because his listed address was Apartment 2 and they wanted to search the correct location.  The defendant acknowledged living in an upstairs bedroom in Apartment 1 and said his cell phone was there.

After the team conducted a protective sweep of the residence, the NCDPS probation officers searched the defendant's bedroom.  Probation Officer Rudar found a firearm inside a blue clothes basket near the defendant's bed and notified CMPD Officer Stark, who seized the gun.  The defendant's cell phone, electronic monitoring charger, and probation paperwork were also found in the room.

Officer Stark advised the defendant of his Miranda rights, which he verbally waived.  He stated that he had "fucked up."  The defendant told his girlfriend, in front of Officer Stark, that they found a gun in his room, then clarified "in the room I was laying down in," or words to that effect.  Officer Stark arrested the defendant for the North Carolina charge of possession of a firearm by a felon.  A federal grand jury later indicted the defendant for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1).  The instant motion followed.

II.  DISCUSSION

The defendant alleges the warrantless search, as part of a joint federal-state task force operation, was not conducted at a reasonable time, and was not directly related to probation supervision.  (Doc. No. 17 at 1-2).  The defendant also claims that he was unlawfully arrested without a warrant and that his statements should

be suppressed because he was immediately placed in handcuffs and questioned before being given Miranda warnings. (Doc. No. 25 at 6-7).

  A. Warrantless Search

The Supreme Court upheld a warrantless search of a probationer's residence finding that Wisconsin's probation system presented "special needs" beyond normal law enforcement, justifying departure from the usual warrant and probable cause requirements. Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987). The Fourth Circuit examined North Carolina's probation system and found the state had "the identical need to supervise probationers' compliance with the conditions of their probation in order to promote their rehabilitation and protect the public's safety." United States v. Midgette, 478 F.3d 616, 623 (4th Cir. 2007). The appellate court further found that North Carolina narrowly tailored the authority to conduct warrantless searches to fit the state's "special needs," not merely its interest in law enforcement; accordingly, searches conducted according to North Carolina's probation statute are reasonable under the Fourth Amendment. Id. at 624.

    1. Search at a reasonable time

One of the requirements in N.C. Gen. Stat. § 15A-1343(b)(13) is that a probationer submit to a warrantless search "at reasonable times." The defendant contends that the search conducted at approximately 10:30 p.m. was an unreasonable nighttime intrusion into a private home. (Doc. No. 17: Motion at 5). The government counters that the time of the search of reasonable under the totality of the circumstances, including the facts that the defendant was awake,

dressed, and had been seen outside the apartment just before the officers' arrival. (Doc. No. 22: Response at 7).

The Fourth Circuit has held "the appropriate time for a search of a home is not amenable to a universal rule" and that "execution of a warrant during a family dinner on Thanksgiving day or during the celebration of a wedding might be considered more intrusive that a routine nighttime execution of a warrant at 10:30 p.m." United States v. Rizzi, 434 F.3d 669, 675 (4th Cir. 2006).[4] Here, the probation officers testified without contradiction that NCDPS policy allows them to conduct a search anytime during their shift, which ends at midnight. The Summer Eclipse Operation was scheduled to occur between 6 and 11 p.m. when probationers would be expected to be at their residences. The team conducted searches at five or six other locations before arriving at the defendant's residence at approximately 10:20 p.m. The defendant, who was under a 6 p.m. curfew, was not found asleep, but rather running from the parking lot into Apartment 1. Probation Officer Winchester related the defendant was wearing jeans and a t-shirt, not sleep attire, when they spoke. These facts decrease the obtrusiveness of the warrantless entry into the defendant's residence and lead the Court to find that the search was conducted at a reasonable time. Compare United States v. Irons, 226 F. Supp. 3d 513 (E.D.N.C. 2016) (disapproving of 6:15 a.m. search), with United States v.

---

[4] Federal Rule of Criminal Procedure 41(a)(1)(B), which governs the execution of federal search warrants, defines "daytime" as ending at 10 p.m.

Plemmons. 2017 WL 6820202, slip op. at 9 (W.D.N.C. Dec. 11, 2007) (approving 9 p.m. search).

      2.    Search by probation officer

Another requirement of N.C. Gen. Stat. § 15A-1343(b)(13) is that warrantless searches be "by a probation officer." The defendant characterizes the instant search as a federal-state task force operation where the probation officer supervising him was not present. (Doc. No. 17: Motion at 2-3). The defendant has not shown any requirement that "his" probation officer be involved to validate a search. Additionally, the Fourth Circuit has held:

> While North Carolina's probation law authorizes only probation officers to conduct warrantless searches, that authorization does not preclude the probation officer from obtaining help from the police department for the purpose of physically conducting the search. In cases involving the precise statutory scheme under consideration here, North Carolina courts have held that "the presence and participation of police officers in a search conducted by a probation officer, pursuant to a condition of probation, does not, standing alone, render the search invalid."

Midgette, 478 F.3d at 625-26 (citing State v. Church, 430 S.E.2d 462, 466 (N.C. Ct. App. 1993) and State v. Howell, 277 S.E.2d 112, 114 (N.C. Ct. App. 1981)).

Here, the operation plan establishes that the NCDPS conducted the initiative with the participation of CMPD and ATF. (Doc. No. 18 at 2). The plan was approved by the NCDPS chain of command, not the other agencies. It specifies that NCDPS was responsible for "taking the lead at residences," with Team Leaders (NCDPS probation officers) "coordinating the compliance activities for their teams." (Id. at 3). At the defendant's residence, Probation Officer Winchester announced

the team's presence as "probation" and interacted with the defendant while other probation and police officers secured the scene. Probation Officer Rudar testified without contradiction that he performed the search that yielded the firearm. Only then was CMPD Officer Stark contacted to seize the gun as evidence of a new crime and to initiate a state charge, which NCDPS lacked authority to do. Accordingly, the Court finds that the search was properly conducted by North Carolina probation officers with the assistance of other law enforcement agents.

   3. Search for purposes directly related to the probation supervision

Finally, N.C. Gen. Stat. § 15A-1343(b)(13) requires that warrantless searches be "for purposes directly related to the probation supervision."[5] The defendant contends the search was not directly related to probation supervision because "its purpose was to further the mission of a joint task force operation." (Doc. No. 17: Motion at 6).

He relies heavily on State v. Powell, 800 S.E.2d 745, 753-54 (N.C. Ct. App. 2017), in which the state intermediate appellate court found "from the officers' testimony that the search of Defendant's home occurred as part of an ongoing

---

[5] The defendant does not take issue with the requirement that he be "present" during a search under N.C. Gen. Stat. § 15A-1343(b)(13). He does argue that the probation agreement "said nothing about warrantless law enforcement searches of his residence" as compared to his person or vehicle. (Doc. No. 17: Motion at 10). He mistakenly relies on N.C. Gen. Stat. § 15A-1343(b)(14) (condition number 10 in his state judgments), which addresses searches by law enforcement officers and does not mention residences. The instant search is based on N.C. Gen. Stat. § 15A-1343(b)(13) (condition number 9 in his state judgments), which addresses searches by probation officers of a probationer's person, vehicle, and "premises." See United States v. Plemmons. 2017 WL 6820202, slip op. at 9 (WDNC Dec. 11, 2007)(rejecting similar argument).

operation of a U.S. Marshal's Service Task Force," and, thus, not for purposes directly related to the probation supervision. The court emphasized that its decision resulted from the specific facts of that case and did not diminish the authority of probation officers to conduct warrantless searches or to utilize the assistance of law enforcement officers in conducting such searches. Id. at 754. Those facts showed that a USMS task force was conducting an operation in a specific geographical area of Catawba County using a list of probationers provided by NCDPS. Id. at 747. Although the stated purpose was to target violent offenses involving firearms, not all the offenders were selected based on that criteria. Id. Probation officers testified that there was no particular reason to search the defendant other than simply a random search of a person on a list given to the USMS task force. Id. at 749-50.

Here, by contrast, the operation plan shows the initiative was conducted by NCDPS with the assistance of CMPD and ATF, not the other way around. (Doc. No. 18 at 2). The purpose of the initiative was "to ensure compliance with the conditions of supervision." (Id.). The defendant's supervising probation officer testified that the purpose of supervision was to lead a law-abiding life. Thus, she requested that the defendant be put on the list for a compliance check because of his continued drug use, the smell of marijuana at his residence, his history of weapon possession, and his possible gang affiliation. The role of officers from other agencies was limited to assisting with safety and security during the search and taking out charges if evidence of new crimes was discovered. Thus, the facts of the instant

case show that the purpose of the search of the defendant's residence was directly related to his probation supervision, which prohibited him from using or possessing illegal drugs and associating with drug users/possessors. N.C. Gen. Stat. § 15A-1343(b)(15).

The evidence developed at the hearing shows that the warrantless search of the defendant's bedroom was in compliance with the authorizing North Carolina statute because it was conducted by a probation officer at a reasonable time in the probationer's presence for purposes directly related to his supervision. Therefore, the search was reasonable under the Fourth Amendment. Midgette, 478 F.3d at 62.

B. Warrantless arrest

The defendant claims he was unlawfully arrested for violating the conditions of his probation because state law requires a law enforcement officer to act pursuant to either a judge-issued warrant or a probation officer-signed statement specifying the conditions violated. (Doc. No. 25 at 6). A police officer may arrest a person without a warrant based on probable cause that the person committed a felony. United States v. Watson, 423 U.S. 411, 417 (1976). Here, Probation Officer Rudar's finding a loaded handgun in a clothes basket in a room the defendant identified as his and which contained his other belongings established probable cause for CMPD Officer Stark to arrest the defendant without a warrant for the felony offense of felon in possession of a firearm. Therefore, the arrest was lawful under the Fourth Amendment.

C. Miranda warnings

The defendant asserts that his statements should be suppressed because he was immediately placed in handcuffs and questioned before being given Miranda warnings. (Doc. No. 25 at 6-7). The United States Supreme Court and the Fourth Circuit have held that officers may take reasonably necessary steps to protect their personal safety and maintain the status quo while investigating a suspect. United States v. Leshuk, 65 F.3d 1105, 1109 (4th Cir. 1995) (citing United States v. Hensley, 469 U.S. 221, 235 (1985)). Thus, the Fourth Circuit has concluded that drawing weapons, handcuffing a suspect, placing him in a patrol car for questioning, and even using force does not necessarily elevate a lawful stop into a custodial arrest. Id. at 1109-1110. Such measures are necessary during a preliminary investigation to prevent the flight of a suspect and minimize the risk of harm to the officers. Michigan v. Summers, 452 U.S. 692, 702-703 (1981). Miranda warnings are necessary when a reasonable person in the suspects position would have considered himself "in custody," that is restrained to the degree of formal arrest. Berkemer v. McCarty, 468 U.S. 420, 440-443 (1984).

Here, Probation Officer Winchester initially placed the defendant in handcuffs for officer safety during the preliminary protective sweep of the apartment. He explained to the defendant they were there to conduct a warrantless search; thus, a reasonable person in the defendant's position would not have considered himself under arrest, and the brief questioning to determine the proper room to search was not custodial interrogation. Once the gun was discovered,

Officer Stark formally placed the defendant under arrest and gave him <u>Miranda</u> warnings before asking questions about the gun. Therefore, the officers did not violate the defendant's Fifth Amendment rights.

## III. CONCLUSION

Probation officers properly conducted a warrantless search of the defendant's bedroom leading to the discovery of a firearm. The defendant was then lawfully arrested without warrant for a felony. His initial investigative detention did not rise to the level of custodial arrest, and he was given <u>Miranda</u> warnings after he was arrested.

**IT IS, THEREFORE, ORDERED** that the Motion to Suppress, (Doc. No. 17), is **DENIED**.

Signed: January 28, 2019

Robert J. Conrad, Jr.
United States District Judge